# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STANLEY P. LASKOWSKI, III; and MARISOL LASKOWSKI,** | : | No. 3:10cv600 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| **DEPARTMENT of VETERAN AFFAIRS,** | : | |
| Defendant | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

Before the court are plaintiffs' motions in limine. Having been fully briefed, the matters are ripe for disposition.

**Background**

This case arises from the alleged deficient treatment Plaintiff Stanley P. Laskowski, III (hereinafter "Mr. Laskowski") received for post traumatic stress disorder (PTSD) at Wilkes-Barre Veterans Affairs Medical Center (WBVAMC) between April 11, 2007 and August 13, 2007. Mr. Laskowski was a member of the United States Marine Corps. While he was a marine, Mr. Laskowski participated in the invasion of Iraq. Upon completing his tour of duty in Iraq, Mr. Laskowski served as an instructor at Paris Island. In early 2007, Mr. Laskowski was honorably discharged and he moved to Northeastern Pennsylvania to raise his young family.

Shortly after his discharge from the Marines, in April 2007, Mr. Laskowski was diagnosed with PTSD. He was treated for this condition at WBVAMC. Plaintiffs allege that WBVAMC provided grossly deficient care from the time Mr. Laskowski

first sought treatment on April 11, 2007 until August 13, 2007, when Mr. Laskowski was arrested after breaking into a pharmacy to steal prescription medication. Mr. Laskowski spent 42 days in jail and was later admitted to the Coatsville Veterans Affairs Medical Center PTSD inpatient program. Mr. Laskowski has been rated by the VA as unemployable since August 2007. Plaintiffs seek a total of $10,000,000 in damages, including a $5,000,000 loss of consortium claim for Mr. Laskowski's wife–Plaintiff Marisol Laskowski.

Plaintiffs have filed four motions in limine in anticipation of the pre-trial conference. Defendant, the Department of Veterans Affairs (hereinafter the "government"), opposes all of plaintiffs' motions in limine. Plaintiffs' motions will be discussed in the order they were filed.

**Jurisdiction**

Plaintiffs bring this claim pursuant to the Federal Torts Claims Act. We have jurisdiction under 28 U.S.C. § 1331 ("The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We also have jurisdiction under 28 U.S.C. § 1346(b)(1) ("The district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the

claimant in accordance with the law of the place where the act or omission occurred.").

**Discussion**

Plaintiffs filed four motions in limine. The first motion seeks to exclude evidence that Mr. Laskowski receives disability benefits from the Department of Veterans Affairs. (Doc. 24). The second motion seeks to preclude the government from introducing evidence it obtained from Mr. Laskowski's therapy sessions after August 13, 2007. (Doc. 25). The third motion seeks to prevent the government from asserting the "felony conviction recovery rule." (Doc. 26). The fourth motion seeks to preclude the government from arguing that the treatment provided to Mr. Laskowski met the applicable standard of care. (Doc. 27). We will address each motion in turn.

**A. First Motion in Limine**

Plaintiffs' first motion in limine petitions the court to prevent the government from introducing evidence of the monetary benefits Mr. Laskowski received from the Department of Veterans Affairs on the grounds that such evidence is barred by the collateral source rule. (Doc. 24). Under Pennsylvania law, the collateral source rule allows a plaintiff to recover from a defendant as well as another, independent source, such as an insurance policy. See Johnson v. Beane, 664 A.2d 96, 100 (Pa. 1995) (citing Beechwoods Flying Serv., Inc. v. Hamilton Contracting Corp., 476 A.2d 350 (Pa. 1984)). The principle behind this rule is clear, "it is better for the wronged

3

plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong." Id.

Plaintiffs assert there are two reasons why the collateral source rule prohibits the government from introducing the evidence of the Department of Veterans Affairs disability benefits (hereinafter "VA benefits") to reduce plaintiffs' damages. First, plaintiffs contend that Mr. Laskowski's VA benefits are funded from a separate source and not the general revenues of the United States. The Third Circuit has held that government benefits paid from a separate source, and not from general revenues, are a collateral source. Titchnell v. United States, 681 F.2d 165, 175-76 (3d 1982) (holding that payments to plaintiff by the Medicare program are collateral in a tort suit against the federal government because plaintiff contributed to the Medicare trust fund); Smith v. United States, 587 F.2d 1013, 1016 (3d Cir. 1972) (finding that Social Security was a collateral source under Pennsylvania law because it is a program that is funded by employee contributions). Second, plaintiffs assert that Mr. Laskowski "contributed" to the VA benefits through military service and is entitled to those payments. Plaintiffs support this reasoning by analogizing Mr. Laskowski's situation to that of plaintiffs who were allowed to keep federal sick pay as collateral in a tort suit against the federal government. See Leeper v. United States, 756 F.2d 300, 303-04 (3d Cir. 1985).

Defendants counter plaintiffs' motion by citing longstanding federal precedent finding that VA benefits are not collateral in FTCA lawsuits against the department.

4

See United States v. Brown, 348 U.S. 110, 111 (1954) (holding that a veteran's "recovery under the Tort Claims Act should be reduced by the amounts paid by the United States as disability payments under the Veterans Act"); Brooks v. United States, 337 U.S. 49, 53 (1949) ("[W]e now see no indication that Congress meant the United States to pay twice for the same injury"); Carter v. United States, 982 F.2d 1141, 1145 (1992) (finding that "[w]hen the VA is both injurer and source of incremental benefits, payments made in the two capacities must be netted to produce a single recovery").

      The court agrees with the government that the VA benefits are not collateral. First, there is no indication that Mr. Laskowski's VA benefit payments are made from a segregated account; rather, it appears that VA benefits are paid from general government revenues.  Plaintiffs' attached two pages of a government accounting report to support their contention that VA benefits are funded from a segregated government account.  (See Doc. 24, Ex. A, FY 2010 Performance and Accountability Report).  These two pages reflect how the federal government tracks and evaluates liabilities for future VA benefit payments.  This report does not indicate that disability payments from the Department of Veterans Affairs are in any way unique from the system of accounting employed throughout the federal government.  Furthermore, unlike Social Security and Medicare payments, which draw on a government trust account, there is no Department of Veterans Affairs disability trust.  VA benefits draw on the same source of federal funding as all other federal government spending.

Furthermore, the court is unconvinced that Mr. Laskowski's VA benefits are a collateral source because he became eligible to receive such benefits due to his years of military service. This ruling would qualify all Department of Veterans Affairs payments as a collateral source since these payments are only made to those who have served the country militarily. Such a ruling would be inconsistent with Third Circuit precedent which has found that medical care paid for by the Department of Veterans Affairs is not collateral under Pennsylvania law. See Feeley v. United States, 337 F.2d 924, 933-34 (1964). As such, plaintiffs' motion in limine to exclude evidence of the VA benefits will be denied.

**B. Second Motion in Limine**

In their second motion in limine, plaintiffs ask the court to exclude evidence obtained by the government as a result of the medical treatment the department of Veterans Affairs provided after August 13, 2007. (Doc. 25). Plaintiffs wish to invoke the psychotherapist-patient privilege for the treatment that occurred after August 13, 2007. Plaintiffs admit to waiving the privilege for the treatment that occurred between April 11, 2007 and August 13, 2007. Plaintiffs also argue that if they cannot invoke the psychotherapist-patient privilege, then the evidence should be excluded as irrelevant under Rule 402 or as unfairly prejudicial under Rule 403. The court does not agree with plaintiffs arguments and their second motion in limine will be denied.

The United States Supreme Court has held that "confidential communications

between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rul 501 of the Federal Rules of Evidence." Jaffee v. Redmond, 518 U.S. 1, 15 (1996). The psychotherapist-patient privilege is analogous to the attorney-client privilege. Id. at 10. As is the case with the attorney-client privilege, a plaintiff waives the psychotherapist-patient privilege by pursuing a malpractice claim against the psychotherapist and placing the care provided in issue. Koch v. Cox, 489 F.3d 384, 389 (D.C. Cir. 2007).

    The court finds that plaintiffs waive the psychotherapist-patient privilege in its entirety by pursuing a professional malpractice claim and placing the care Mr. Laskowski received from the Department of Veterans Affairs doctors at issue. Plaintiffs also deposed witnesses at length about the care provided to Mr. Laskowski after August 13, 2007, including some medical professional who only provided Mr. Laskowski care after August 13, 2007. It would not be fair to allow plaintiffs to keep parts of the treatment confidential while using other treatment sessions as the basis of their claim. See id. at 391 (noting that the selective disclosure of "'part of a privileged communication in order to gain an advantage in litigation'" waives the psychotherapist privilege) (quoting S.E.C. v. Lavin, 111 F.3d 921, 933 (D.C. Cir. 1997)).

    The court is also unconvinced by plaintiffs' relevancy argument. Rule 402 provides that all relevant evidence is admissible and that irrelevant evidence is

7

inadmissible. See FED. R. EVID. 402. The government contends that the post-August 13, 2007 medical records are relevant because these records demonstrate that Mr. Laskowski continued to abuse drugs after he completed an inpatient PTSD treatment program. The government asserts that this evidence is central to establishing a defense to the plaintiffs' claim that the government's deficient care from April 2007 to August 2007 led to Mr. Laskowski's self-medication. The court agrees with the government that the post-August 13, 2007 medical records are relevant for this purpose.

The court also disagrees with plaintiffs' contention that post-August 13, 2007 medical records should be excluded under Rule 403. As discussed above, the evidence at issue is relevant to the government's defense. The court does not find this evidence to be unduly prejudicial. Plaintiffs do not cite a specific reason for why this evidence is unduly prejudicial and the court notes that plaintiffs engaged in discovery of the post-August 13, 2007 medical care. Furthermore, the introduction of the post-August 13, 2007 records will not confuse the issues because the case is to be tried as a bench trial. Therefore, plaintiffs' second motion in limine to preclude the introduction of Mr. Laskowski's medical records after August 13, 2007 will be denied.

## C. Third and Fourth Motions in Limine

In their third motion in limine, plaintiffs seek to preclude the government from arguing the applicability of the "felony conviction recovery rule." (Doc. 26). The

fourth motion in limine seeks to preclude the government from arguing that the government met the standard of care. (Doc. 27). Both motions essentially ask this court to preclude the government from making substantive legal arguments when this case comes before the court for a bench trial. Motions in limine are a means of addressing the admissibility of evidence, and it is an improper technique for arguing that the opposing party's legal arguments on the merits of the case are incorrect. See, e.g., C & E Servs., Inc. v. Ashland, Inc., 539 F. Supp.2d 316, 323 (D.D.C. 2008) (finding that a motion in limine was the improper vehicle for the parties to allege that a claim must fail because it lacks evidentiary support); Nat'l Res. Def. Council v. Rodgers, CIV-S-88-1658, 2005 WL 1388671 (E.D. Cal. June 9, 2005) ("Motions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues."). As such, both of these motions will be denied.

In their briefs on the third motion in limine, the parties request that the court assess the scope of Pennsylvania's public policy against allowing a felon-plaintiff from collecting damages that would not have occurred absent felon-plaintiff's criminal conduct. Plaintiffs contend that this policy is limited to cases in which the plaintiff has been actually convicted of a felony. The government argues that the policy is broader and encompasses incidents of admitted wrongdoing. The court will not rule on this legal issue at this time, and the motion in limine will be denied as its subject matter deals with a non-evidentiary issue.

In their briefs on the fourth motion in limine, the parties dispute whether it

9

would be proper for the government to argue at trial that the standard of care was satisfied. The plaintiffs contend that the government's expert, Dr. Glazer, made damaging statements, that these statements are admissible under Rules 801(d)(2) and 704(a), and that the government should be bound by these statements and prevented from arguing that the standard of care was met. In response, the government does not dispute that Dr. Glazer opined that the standard of care was breached or that Dr. Glazer's opinions are admissible under the Rules of Evidence. Rather, the government asserts that it intends to use Dr. Glazer's opinion to establish that the standard of care was breached in some respect but not others. Whether and to what degree the standard of care was breached is an ultimate issue of fact, and it is improper subject matter for a motion in limine. Therefore, the court will deny plaintiffs' motion in limine to preclude the government from making arguments on the standard of care.

**Conclusion**

For the foregoing reasons, we will deny all of plaintiffs' motions in limine. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STANLEY P. LASKOWSKI, III; and MARISOL LASKOWSKI,** | : | No.  3:10cv600 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| **DEPARTMENT of VETERAN AFFAIRS,** | : | |
| Defendant | : | |

## ORDER

**AND NOW**, to wit, this 24th day of October 2011, plaintiffs' motions in limine (Docs. 24, 25, 26, 27) are hereby **DENIED**.

                                                   **BY THE COURT:**

                                                   s/ James M. Munley
                                                   **JUDGE JAMES M. MUNLEY**
                                                   **United States District Court**